UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONITA ROBINSON, o/b/o D.S.L.R.,

        Plaintiff,        Civil Action No. 18-11835
                              Honorable Paul D. Borman
v.                                       Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 13]**

Plaintiff Donita Robinson ("Robinson") brings this action on behalf of her minor son, D.S.L.R. ("Plaintiff"),[1] pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #12, #13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law

---

[1] For convenience, the Court will refer to D.S.L.R., the minor child, as "Plaintiff," although his mother, Donita Robinson, is the named plaintiff in this action.

Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence.  Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, Plaintiff's Motion for Summary Judgment (**Doc. #12**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

**II.    REPORT**

    **A.    Background**

Plaintiff was born in October 2005, making him nine years old at the time his SSI application was filed in May of 2015.  (Tr. 147).  He alleges disability primarily as a result of attention deficit hyperactivity disorder ("ADHD") and impulse control disorder.  (Tr. 260, 318).

After Plaintiff's application for SSI was denied at the initial level on February 10, 2016 (Tr. 190-97), an administrative hearing was held before ALJ Patrick MacLean on March 27, 2017 (Tr. 141-79).  Both Plaintiff and his mother appeared and testified at the hearing, represented by attorney Ebonie Adams.  (*Id.*).  On August 28, 2017, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act.  (Tr. 120-37).  On April 11, 2018, the Appeals Council denied review.  (Tr. 1-5).  On behalf of Plaintiff, Ms. Robinson timely filed for judicial review of the

final decision on June 8, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, school records, and other evaluations. In lieu of summarizing those materials here, the Court will make references and provide citations to the record as necessary in its legal analysis.

**B.     Framework for Child Disability Determinations**

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining a child's disability claim: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. § 416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder," whereas the "purpose of the paragraph B

3

criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not meet a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. "Medical equivalency is covered by 20 C.F.R. § 416.926; functional equivalency is covered by Section 416.926a." *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, No. 1:08CV254, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or

4

> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, No. 11-11862, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. § 416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, No. 04-03386 SC, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b). Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of these six domains or "marked" limitations" in two of the six. *See* 20 C.F.R. § 416.926a(d). An "extreme" limitation exists when

5

a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i).

### C. The ALJ's Findings

At Step One, the ALJ found that Plaintiff has never engaged in substantial gainful activity. (Tr. 123). At Step Two, the ALJ found that Plaintiff has the severe impairments of ADHD, adjustment disorder, learning disorder in math and reading, and impulse control disorder. (*Id.*). At Step Three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (Tr. 124). The ALJ also found that Plaintiff's impairments do not functionally equal any Listing because he has "no limitation" in the domains of moving about and manipulating objects and health and physical well-being, and "less than marked" limitations in the other four functional domains. (Tr. 126-37).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*

7

*v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

    **E.**    **Analysis**

As set forth above, the ALJ found that Plaintiff has the severe impairments of ADHD, adjustment disorder, learning disorder, and impulse control disorder. (Tr. 123). The ALJ then determined, in relevant part, that Plaintiff's impairments do not functionally equal a Listing because he has "no limitation" in the domains of moving about and manipulating objects and health and physical well-being, and "less than marked" limitations in the other four functional domains. (Tr. 126-37). Plaintiff now argues that the ALJ erred in reaching this conclusion. (Doc. #12 at 16-22).

In determining that Plaintiff's impairments do not functionally equal a Listing, the ALJ discounted Plaintiff's allegations of disabling limitations for three primary

reasons: (1) Plaintiff's mental health "treatment has been generally successful in controlling his symptoms"; (2) Plaintiff "has not sought [mental health] treatment … since January 2015"; and (3) Plaintiff "has not been entirely compliant in taking prescribed medications." (Tr. 127, 128-29). The problem, however, is that the evidence of record appears to contradict each of these findings.

In evaluating functional equivalence, the ALJ began by summarizing Plaintiff's treatment records from July 2013 through January 2015. (Tr. 127). Specifically, the ALJ noted that Plaintiff "received treatment, including prescribed medications, for diagnoses of ADHD, learning disorder (math and reading), and impulse control disorder …." (*Id.*). As the ALJ further noted, during this time period, Plaintiff had "behavior and impulse issues with emotional outbursts and difficulty focusing, performing in school, and making friends." (*Id.*) The ALJ also acknowledged that mental status examinations performed during that time frame showed that Plaintiff had "fair judgment, poor impulse control and judgment, concentration deficits, and loosely organized thought content with fluctuating emotions and delayed and racing stream of activity." (*Id.*).

Despite these clear deficiencies, the ALJ first discounted Plaintiff's allegations of disability because "the records reflect treatment and medications have been generally successful in controlling his symptoms." (Tr. 129). Specifically, the ALJ observed that Plaintiff's "hyperactivity is better with medication"; "his sleep

9

and appetite were consistently normal";[2] and he was "less aggressive and able to settle down and control his anger and not as frustrated with medication." (*Id.*). As explained in greater detail below, however, while there are isolated instances of improvement sprinkled throughout several years of treatment notes, the record as a whole simply does not support a finding that treatment and medication were "generally successful in controlling [Plaintiff's] symptoms." (*Id.*).

Plaintiff first sought mental health treatment at Lincoln Behavioral Services ("LBS") in June 2013, when he was seven years old and having emotional outbursts, multiple crying spells per day, and sleeping only two or three hours per night. (Tr. 371). His primary care physician suspected ADHD and started him on Adderall, which helped somewhat, but after a psychiatric evaluation at LBS in July 2013, that diagnosis (as well as impulse control disorder) was confirmed, and clonidine was added to help with sleep and impulsivity. (Tr. 398-99). Both medications were increased in November 2013, and Risperdal was added, because Plaintiff was still having temper tantrums and had a short attention span. (Tr. 431-32). In January 2014, the medications were again increased. (Tr. 427). In March 2014, it was noted that Plaintiff was better able to control his anger and not as frustrated, and his

---

[2] In reality, the ALJ's observations regarding Plaintiff's sleep and appetite are also belied by the record. (*See, e.g.,* Tr. 371 ("only sleeping around 2 to 3 hours per night" in June 2013), 432 ("having difficulty sleeping" in November 2013), 428 (picky appetite in January 2014), 421 (picky appetite in March 2014), 425 (still some difficulty with sleep in October 2014), 334 (difficulty sleeping in January 2015)).

10

medications were continued. (Tr. 421). But, three months later, Plaintiff was demonstrating more impulsivity, having been caught "stealing at home and pulling a knife at a peer after an argument." (Tr. 423). His Risperdal dose was again increased. (*Id.*). In October 2014, Plaintiff was still having intermittent angry outbursts and temper tantrums and lying for no reason; again, his Risperdal dose was increased. (Tr. 425). In January 2015, his mother reported that there had been some overall improvement since Plaintiff began treatment at LBS, but he remained easily distracted, with poor judgment and racing thoughts, and angered quickly. (Tr. 337-38). Plaintiff also reported "thoughts of killing himself by running outside and getting bit by a dog or something."[3] (Tr. 338). Thus, contrary to the ALJ's observations, while the record might suggest some slight improvement during this time period, there is no indication that the prescribed treatment and medication were "generally successful" at controlling Plaintiff's symptoms. (Tr. 129).

Compounding the ALJ's erroneous characterization of these medical records is the fact that he also discounted the functional impact of Plaintiff's impairments based on a mistaken belief that Plaintiff had "not sought treatment from Lincoln Behavioral Services, or any other mental health-treating source since January 2015[.]" (Tr. 128-29). Indeed, the ALJ concluded that Plaintiff's supposed lack of

---

[3] This is contrary to the ALJ's observation that Plaintiff had "no unusual thoughts or behavior or homicidal or suicidal ideation or plan …." (Tr. 129).

11

mental health treatment indicated that his "symptoms may not have been as serious as has been alleged in connection with this application and appeal." (Tr. 129). The evidence of record contradicts the ALJ's finding in this respect, however. For example, Plaintiff returned to LBS in February 2015, at which time his medications were continued. (Tr. 410-11). And, at a June 2015 medication review, Plaintiff was alert and cooperative, but fidgety, impatient, and oppositional. (Tr. 406-09). At that time, his mother reported – somewhat inconsistently – that he "[g]enerally does well when he takes his meds" but that he was attending summer school and might be forced to repeat the previous grade. (Tr. 407). At his next visit to LBS, in October 2015, it was noted that Plaintiff was impatient, hyper, and inattentive, and his Adderall dose was increased. (Tr. 401). Plaintiff returned to LBS in January 2016 – more than one year after the ALJ believed he had stopped receiving mental health treatment – at which time his medications were continued. (Tr. 498). As this medical evidence makes clear, the ALJ's observation that Plaintiff did not receive any mental health treatment after January 2015 – and his resulting decision to discount the seriousness of Plaintiff's allegations of disability in large part for this reason – is simply not accurate and seriously undercuts the validity of his ultimate conclusion.[4]

---

[4] Indeed, records submitted to the Appeals Council demonstrate that Plaintiff's mental health treatment continued throughout 2016 and 2017. (Tr. 11-114). From these records, it is apparent that Plaintiff's mental condition was far from stable, as his medications and doses were frequently

Finally, in evaluating functional equivalence, the third reason articulated by the ALJ for discounting Plaintiff's allegations of disability is the fact that he purportedly was not "entirely compliant in taking prescribed medications." (Tr. 128, 131, 132, 133, 136). In making this broad statement, however, the ALJ did not cite to any particular treatment records; rather, he referred only to Plaintiff's mother's report to the consultative examiner that she "has found the pills in toilets or spit out." (Tr. 127, 539; *see also* Tr. 128, 131, 132, 133, 136). This single statement, repeated and extrapolated throughout the ALJ's decision to suggest that Plaintiff was *routinely* non-compliant with his prescribed medications, is unfounded.

Even taking Plaintiff's mother's statement at a reasonable face value, however, would require far more analysis by the ALJ than what is contained in his decision. Before concluding that a claimant's alleged medication non-compliance weighs against his allegations of disability, the ALJ must consider any reasons justifying such non-compliance. *See* 20 C.F.R. § 416.930(c). The ALJ failed to do so here. Specifically, the ALJ did not consider the fact that Plaintiff was a *child* with *severe mental impairments*; either of these facts, standing alone, could certainly explain non-compliance with medication, but the ALJ made no mention of them.

---

changed; his status was sometimes characterized as "worsening"; he was often inattentive, argumentative, irritable, disrespectful, and distractible; and he was suspended from school on multiple occasions. (*Id.*). On remand, the ALJ should thoroughly consider the import of this evidence.

*See, e.g., Williams v. Colvin*, No. 4:14CV1057NCC, 2015 WL 5735126, at *5 (E.D. Mo. Sept. 29, 2015) ("as a child, A.W. was not responsible for his non-compliance" with prescribed medication); *Rogers v. Comm'r of Soc. Sec.*, No. 17-14151, 2019 WL 1102226, at * (E.D. Mich. Jan. 17, 2019) (ALJ's failure to consider claimant's mental impairment as explanation for noncompliance with medication was error). Here, in discounting the seriousness of Plaintiff's condition on the basis of his alleged medication noncompliance, the ALJ failed to consider the combined effects of his age and his significant mental impairments on his ability to adhere strictly to a prescribed medication regimen.[5] All told, the ALJ considered just one explanation for Plaintiff's noncompliance with medication – namely, the fact that his symptoms must have been less severe than he claimed (Tr. 128-29) – and ignored other possible reasons why Plaintiff might have failed to take medication consistently.

In sum, the ALJ's decision in this matter is flawed factually and in its failure to follow the applicable regulations. Contrary to the ALJ's repeated observation that Plaintiff stopped receiving mental health treatment in January 2015, he in fact sought and received treatment for ADHD and impulse control disorder consistently from 2013 through the time of the ALJ's decision in 2017. During that entire period of time, his medications were routinely changed, increased, and otherwise tweaked in

---

[5] The ALJ also failed to consider the fact that Plaintiff's judgment was routinely characterized as "poor" or "impaired" (Tr. 337, 356, 398; *see also* Tr. 32, 95, 100, 105), which could further explain instances of medication noncompliance.

14

an ongoing effort to stabilize his symptoms and behavior. Despite these medication changes and ongoing anger management therapy, Plaintiff remained easily distracted and inattentive at school, had frequent emotional outbursts and crying spells, and was suspended from school for fighting and other inappropriate behavior on multiple occasions. He repeated the fourth grade and, at the time of the hearing, was in danger of failing the fifth grade too.[6] Again, given all of these facts, the ALJ's finding that Plaintiff does not functionally equal a Listing is not supported by substantial evidence. As such, remand is required.

### III. CONCLUSION

For foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, Plaintiff's Motion for Summary Judgment (**Doc. #12**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: April 3, 2019                   s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                                 United States Magistrate Judge

---

[6] According to his fifth grade teacher, Plaintiff required "constant one-on-one attention and guidance in order to successfully complete tasks"; was "unable to remain focused"; and had constant problems expressing anger appropriately and respecting/obeying adults. (Tr. 323-25).

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 3, 2019.

                                             s/Eddrey O. Butts
                                             EDDREY O. BUTTS
                                             Case Manager